IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE NEUSTAR, INC. SECURITIES LITIGATION | Case No. 14-CV-00885 JCC TRJ |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD
PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT</u>**

## **TABLE OF CONTENTS**

Preliminary Statement............................................................................................................1

Factual Background .............................................................................................................3

I.      Procedural History .................................................................................................3

II.     Settlement Consideration ........................................................................................4

ARGUMENT ........................................................................................................................5

I.      THE COURT SHOULD GRANT PRELIMINARY
        APPROVAL TO THE PROPOSED SETTLEMENT .........................................5

        A.      Applicable Standards ..................................................................................5

        B.      The Proposed Settlement Falls Well Within
                the Range of Reasonableness and Warrants
                Notice and a Hearing on Final Approval ...................................................6

                1.      The Proposed Settlement Is Fair .................................................. 7

                2.      The Proposed Settlement Is Adequate ......................................... 8

II.     THE COURT SHOULD APPROVE THE PROPOSED
        FORMS OF NOTICE AND PLAN FOR PROVIDING
        NOTICE TO THE SETTLEMENT CLASS..........................................................10

III.    THE PROPOSED SETTLEMENT CLASS
        SHOULD BE CERTIFIED FOR SETTLEMENT
        PURPOSES PURSUANT TO RULES 23(a) AND (b)(3) .................................12

        A.      The Requirements of Rule 23(a) Are Satisfied.....................................12

                1.      The Members of the Proposed
                        Class Are so Numerous That
                        Joinder of all Members Is Impracticable ................................... 12

                2.      Questions of Law and Fact are
                        Common to the Proposed Class .................................................. 13

                3.      Lead Plaintiff's Claims are Typical of
                        Those of the Proposed Settlement Class..................................... 14

4.    Lead Plaintiff Will Fairly and Adequately
Protect the Interests of the Settlement Class ............................................ 15

B.    The Requirements of Rule 23(b)(3) Are Satisfied .................................................. 17

1.    Common Questions of Law and Fact Predominate .................................. 17

2.    A Class Action Is the Superior Method
for Resolution of This Controversy ......................................................... 18

Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................................17, 19

*In re American Capital S'holder Derivative Litig.,*
  No. 11-2424 PJM, 2013 WL 3322294 (D. Md. June 28, 2013) ................................6

*In re BearingPoint Inc. Sec. Litig.,*
  232 F.R.D. 534 (E.D. Va. 2006) ................................................................... *passim*

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.,*
  No. 11-CV-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014) .................................5

*Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.,*
  183 F.R.D. 487 (E.D. Va. 1998) ...........................................................................14

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  134 S. Ct. 2398 (2014)..........................................................................................18

*Jeffreys v. Communications Workers of Am., AFL-CIO,*
  212 F.R.D. 320 (E.D. Va. 2003) ...........................................................................13

*In re Jiffy Lube Sec. Litig.,*
  927 F.2d 155 (4th Cir. 1991) ........................................................................6, 7, 8

*Leinhart v. Dryvit Sys. Inc.,*
  255 F.3d 138 (4th Cir. 2001) ................................................................................15

*In re MicroStrategy, Inc. Sec. Litig.,*
  110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................16

*In re MicroStrategy, Inc. Sec. Litig.,*
  148 F. Supp. 2d 654 (E.D. Va. 2001) .......................................................5, 7, 9, 10

*In re MicroStrategy, Inc. Sec. Litig.,*
  150 F. Supp. 2d 896 (E.D. Va. 2001) ....................................................................5

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ...............................................................8, 12, 13

*In re SCOR Holding (Switzerland) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008)...................................................................14

*In re Serzone Prods. Liab. Litig.*,
231 F.R.D. 221 (S.D. W. Va. 2005)........................................................15, 19, 20

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .....................................................................15, 16

*Simpson v. Specialty Retail Concepts*,
149 F.R.D. 94 (M.D.N.C. 1993) ...........................................................................13

*South Carolina Nat'l Bank v. Stone*,
139 F.R.D. 325 (D.S.C. 1991) ..............................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).........................................................................................13

*Winingear v. City of Norfolk, Va.*,
No. 12 cv 560, 2014 WL 3500996 (E.D. Va. July 14, 2014) ...............................5, 6

**STATUTES**

15 U.S.C. §§ 78u-4(a)(7) .............................................................................................11

15 U.S.C. §§ 78j(b) ........................................................................................................3

15 U.S.C. §§ 78t(a) ........................................................................................................3

**RULES**

Fed. R. Civ. P. 23(1) .................................................................................................6, 11

Fed. R. Civ. P. 23(a) ...............................................................................................12, 17

Fed. R. Civ. P. 23(a)(1)................................................................................................12

Fed. R. Civ. P. 23(a)(2)...........................................................................................13, 14

Fed. R. Civ. P. 23(a)(3)................................................................................................14

Fed. R. Civ. P. 23(a)(4)................................................................................................15

Fed. R. Civ. P. 23(b) ...................................................................................................12

Fed. R. Civ. P. 23(b)(3)..................................................................................12, 17, 18, 20

Fed. R. Civ. P. 23(b)(3)(A)(C)....................................................................................19

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................11

Fed. R. Civ. P. 23(c)(3).............................................................................................10

Fed. R. Civ. P. 23(e) ..................................................................................................5

Fed. R. Civ. P. 23(e)(2)..............................................................................................5

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5...............................................................................................3

1-14A *Moore's Manual Federal Practice and Procedure* § 14A.25 ......................................15, 16

## **Preliminary Statement**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Indiana Public Retirement System ("Lead Plaintiff" or "INPRS"),[1] on behalf of itself and all members of the proposed Settlement Class, respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed Settlement of this class action.

As set forth in the Settlement Agreement, in exchange for the payment of $2,625,000 for the benefit of the Settlement Class, the Settlement will release all Released Defendant Parties from all Released Claims.  Lead Plaintiff and Lead Counsel believe the Settlement represents a favorable result for the Settlement Class in view of the risks, costs and duration of continued litigation, and warrants preliminary approval by this Court.

Lead Plaintiff respectfully requests that this Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (the "Preliminary Approval Order"), annexed to the Stipulation and submitted separately herewith for the Court's convenience.  The Preliminary Approval Order, among other things: (i) preliminarily approves the Settlement as within a range of reasonableness; (ii) schedules a hearing (the "Settlement Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses; (iii) approves the forms and methods of disseminating pre-hearing notice to the Settlement Class, and directs that such notice be issued; (iv) appoints the Claims Administrator recommended by Lead Counsel to administer the Settlement and assist with its implementation; (v) establishes

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated as of July 28, 2015 (the "Settlement Agreement") and filed contemporaneously herewith, as Exhibit 1 to the accompanying Declaration of David J. Goldsmith ("Counsel Declaration").  All references to "Ex. ___" herein are exhibits to the Counsel Declaration.

procedures and a deadline for persons to request exclusion from the Settlement Class; (vi) establishes procedures and a deadline for objecting to the terms of the Settlement, Plan of Allocation, and/or requested attorneys' fees and expenses; and (vii) establishes procedures and a deadline for submitting Proofs of Claim for payments from the Net Settlement Fund.

If the Court grants preliminary approval of the Settlement, Lead Plaintiff respectfully proposes the following schedule for the settlement review and approval process:

- Mailing of individual Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim form to all Settlement Class Members who can be identified through reasonable effort: ***Ten (10) business days after entry of the Preliminary Approval Order (the "Notice Date").***

- Publication of Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"): ***Fourteen (14) calendar days after the Notice Date.***

- Deadline for filing with the Court any submissions in support of final approval of the Settlement, approval of the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses: ***Thirty-five (35) calendar days before the Settlement Hearing.***

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, and/or application for attorney's fees and expenses: ***Twenty-one (21) calendar days before the Settlement Hearing.***

- Date of Settlement Hearing: ***At the Court's convenience, but no earlier than November 16, 2015.***

- Deadline for submission of Proofs of Claim: ***One hundred twenty (120) calendar days after the Notice Date.***

**Factual Background**

## I. Procedural History

On July 15, 2014, a securities class action complaint was filed in this Court on behalf of persons who purchased or acquired Neustar, Inc. publicly traded securities.

On October 7, 2014, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Court appointed INPRS as lead plaintiff and approved its selection of Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel, and appointed Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as liaison counsel.

On November 6, 2014, INPRS filed its Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims against Neustar and certain of its senior executives for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The Complaint alleges, among other things, that Defendants made false and misleading statements regarding Neustar's competitive standing in the bidding and selection process for the next Local Number Portability Administrator ("LNPA") and the risk that Neustar, after 17 years as the sole LNPA, would lose the Number Portability Administration Center ("NPAC") contracts to a competitor.

Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the SEC; (ii) documents filed by the Company and others with the Federal Communications Commission; (iii) articles published by *The Capitol Forum*, a subscription news service, concerning Neustar; (iv) publicly available information, including press releases, news articles, and other public statements issued by the Company; (v) research reports issued by financial

analysts concerning the Company; (vi) other publicly available information and data concerning the Company and the Individual Defendants; and (vii) the applicable law governing the claims and potential defenses.  Lead Counsel also interviewed 21 former Neustar employees and other persons with relevant knowledge and consulted with experts on damages and causation issues.

On December 8, 2014, Defendants filed a motion to dismiss the Complaint, which Lead Plaintiff opposed on December 22, 2014.  On December 29, 2014, Defendants filed a reply brief in further support of their motion to dismiss.  On January 22, 2015, the Court heard oral argument on the motion.  On January 27, 2015, the Court entered a Memorandum Opinion and an accompanying Order granting Defendants' motion and dismissing the Action with prejudice.

On February 25, 2015, Lead Plaintiff filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit ("Court of Appeals") from the Court's Memorandum Opinion and Order dismissing the Complaint.

On May 19, 2015, the Parties participated in a day-long mediation session before a neutral affiliated with Judicial Arbitration and Mediation Services (JAMS).  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements.  The mediation session resulted in an agreement-in-principle to settle the Action.

By Joint Motion filed with the Court of Appeals on May 22, 2015, the Parties requested that the Court of Appeals remand the appeal to the district court for consideration of whether the proposed Settlement is fair, reasonable, and adequate and should be approved; and place the appeal in abeyance pending disposition of the matters before the district court on limited remand. By Order entered on May 28, 2015, the Court of Appeals granted the Parties' Joint Motion.

## II.    Settlement Consideration

The Settlement provides for the release of the Released Defendant Parties from the Released Claims in exchange for payment by Defendants of $2.625 million in cash into an

- 4 -

interest-bearing escrow account for the benefit of the Settlement Class.  The Settlement consideration and any accrued interest, after the deduction of any attorney's fees and expenses awarded by the Court, Notice and Administration Expenses, and Taxes (the "Net Settlement Fund"), will be distributed among all Settlement Class Members who submit timely and valid Proofs of Claim ("Authorized Claimants"), in accordance with the Plan of Allocation approved by the Court and orders of the Court.

## ARGUMENT

### I.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT

#### A.  Applicable Standards

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  "[A]pproval of a class action settlement is committed to 'the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'"  *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 11-CV-754, 2014 WL 4403524, at *8 (E.D. Va. Sept. 5, 2014) (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001)).  In evaluating whether a class action settlement warrants final approval, the district court must decide whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 903-04 (E.D. Va. 2001) ("Simply put, the Court must assess whether the settlement here is both fair and adequate under the circumstances.") (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).

At this stage of the settlement process, the Court need only take a preliminary look at the terms of the Settlement to make sure that it is "within the range of possible approval." *Winingear v. City of Norfolk, Va.*, No. 12 cv 560, 2014 WL 3500996, at *2 (E.D. Va. July 14,

2014) (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827

(E.D.N.C. 1994)).  As explained in *Horton*, courts have generally followed a two-step approach

in reviewing the merits of a proposed class action settlement:

> First, the court conducts a preliminary approval or pre-notification hearing to
> determine whether the proposed settlement is "within the range of possible
> approval" or, in other words, whether there is "probable cause" to notify the class
> of the proposed settlement.  Second, assuming that the court grants preliminary
> approval and notice is sent to the class, the court conducts a "fairness" hearing, at
> which all interested parties are afforded an opportunity to be heard on the
> proposed settlement.

*Id.; see also Manual for Complex Litigation (Fourth)* ¶ 21.632 (2004) ("The judge must make a

preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms

and must direct the preparation of notice of the certification, proposed settlement, and date of the

final fairness hearing.") (internal citations omitted).

Moreover, "[a]lthough the court's essential inquiry for both hearings is the same, i.e.,

whether the proposed settlement is fair, adequate, and reasonable . . . the court's inquiry is

whether there has been a basic showing that the Proposed Settlement Agreement is sufficiently

within the range of reasonableness so that notice should be given." *In re American Capital

S'holder Derivative Litig.,* No. 11-2424 PJM, 2013 WL 3322294, at *3 (D. Md. June 28, 2013)

(internal citations omitted).

> **B.      The Proposed Settlement Falls Well Within
> the Range of Reasonableness and Warrants
> Notice and a Hearing on Final Approval**

The Fourth Circuit applies a two-part test to determine whether a proposed settlement

meets the requirements of Rule 23(e): (1) fairness, which focuses on whether the proposed

settlement was negotiated at arm's-length; and (2) adequacy, which focuses on whether the

consideration provided to the class members is sufficient. *See Jiffy Lube*, 927 F.2d at 158-59.

1.       **The Proposed Settlement Is Fair**

In determining whether a proposed settlement is fair, courts consider: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities[.]" *Jiffy Lube*, 927 F.2d at 158-59.

As will be set forth in detail prior to the Settlement Hearing, Lead Plaintiff's decision to enter into the Settlement was based on its thorough understanding of the strengths and weaknesses of its claims against Defendants after almost two years of investigation and litigation. At the time the Settlement was reached, the Parties had fully briefed Defendants' motion to dismiss, weighed the Court's grounds for the order dismissing the Complaint, and Lead Plaintiff was preparing to litigate the appeal.

Likewise, the Settlement "resulted from arm's length negotiations conducted by counsel with the experience and ability . . . necessary to effective representation of the class's interests." *MicroStrategy*, 148 F. Supp. 2d at 665 (internal quotation omitted). Here, the Settlement is the product of vigorous, arm's-length negotiations, including a day-long mediation session before a neutral affiliated with JAMS. The negotiations were well-informed by the exchange of comprehensive mediation statements and supporting evidence, including information and analyses from experts. The mediation session was indispensable in airing the issues and obstacles to a resolution and clarifying the strengths and weaknesses of the Parties' claims and defenses.

Finally, Lead Counsel has the experience and qualifications necessary to represent the Settlement Class. *See* Ex. 2. Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions, and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class litigations

since the enactment of the PSLRA.  *Id.*  Lead Counsel believes the Settlement is fair and in the best interest of the Settlement Class.  *See, e.g.*, *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 255 (E.D. Va. 2009) ("This District has recognized that when Class Counsel are 'nationally recognized members of the securities litigation bar,' it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.") (quoting *MicroStrategy*, 148 F. Supp. 2d at 665).

Accordingly, the *Jiffy Lube* "fairness" factors are preliminarily met, and the Settlement is sufficiently fair to warrant preliminary approval.

### 2.    The Proposed Settlement Is Adequate

In determining adequacy, courts within the Fourth Circuit consider "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition[2] to the settlement."  *Jiffy Lube*, 927 F.2d at 159.

"The first and second *Jiffy Lube* factors . . . compel the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case."  *Mills*, 265 F.R.D. at 256.  While Lead Plaintiff is confident in the merits of its claims and its chances for securing a reversal from the Court of Appeals, the outcome of any litigation is never certain and Lead Plaintiff faced significant obstacles.

---

[2] Settlement Class Members will be given an opportunity to object to any aspect of the Settlement.  After the deadline for objections has passed, Lead Plaintiff will report the Settlement Class's reaction to the Court.

The Parties disagreed about whether the Settlement Class could establish, among other things: (1) that Defendants made any material misstatements or omissions; (2) that Defendants acted with the required state of mind; (3) the amount by which the prices of Neustar common stock were allegedly artificially inflated (if at all) during the Class Period as a result of the alleged fraud; (4) the extent to which Defendants' alleged misstatements and omissions influenced (if at all) the trading price of Neustar's common stock during the Class Period; (5) that any purchasers of Neustar common stock suffered damages as a result of the alleged misstatements and omissions in Neustar's public statements; and (6) the extent of any such damages.  Overcoming these defenses at trial would be a heavy burden for Lead Plaintiff.  *See*, *e.g.*, *MicroStrategy*, 148 F. Supp. 2d at 666 (finding adequacy and noting "plaintiffs' risk of establishing liability are significant where fraud is alleged") (internal quotation omitted).

The third factor, the anticipated duration and expense of additional litigation, considers the substantial time and expense litigation of this type would entail if the settlement were not reached.  *See id.*  Lead Plaintiff filed a notice of appeal to the Court of Appeals from the Court's order dismissing the Complaint.  Following an agreement to settle the Action, the Parties filed a Joint Motion with the Court of Appeals to remand the appeal to the district court for consideration of whether the proposed Settlement is fair, reasonable, and adequate and should be approved; and place the appeal in abeyance pending disposition of the matters before the district court on limited remand.  Although Lead Plaintiff believes the appeal has merit, a final resolution of the appeal could take years and a reversal was far from assured.  Even if the Fourth Circuit were to reverse, the Parties would engage in class certification, fact and expert discovery, summary judgment proceedings, and potentially trial, all at significant cost for all involved and years of effort.

II.   **THE COURT SHOULD APPROVE THE**
      **PROPOSED FORMS OF NOTICE AND PLAN FOR**
      **PROVIDING NOTICE TO THE SETTLEMENT CLASS**

Lead Plaintiff respectfully requests that the Court approve the form and content of the proposed Notice and Summary Notice.  (*See* Exs. 1 and 3, annexed to the accompanying proposed Preliminary Approval Order).  The Notice is written in plain language and features a question-and-answer format that clearly sets out the relevant information and answers the primary questions Settlement Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice will be mailed to all potential Settlement Class Members who can be identified with reasonable effort, and apprises them of (among many other disclosures) the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, and the claims that will be released.

The Notice also advises that a Settlement Class Member may enter an appearance through counsel if desired; describes the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3); states the procedures and deadline for seeking exclusion from the Settlement Class and for objecting to the proposed Settlement, the proposed Plan of Allocation, or the requested attorneys' fees and expenses; states the procedures and deadline for submitting a Proof of Claim to recover from the Settlement; and provides the date, time and location of the final Settlement Hearing.  *See MicroStrategy*, 148 F. Supp. 2d at 670 (approving notice that stated, among other things, the settlement terms, that class members have the option to exclude themselves from the settlement or to object to the settlement, date of final fairness hearing, and contact information of relevant attorneys).

Further, the Notice satisfies the PSLRA's separate disclosure requirements by stating, among other things, the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Parties are proposing the

Settlement; the maximum amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7).

Lead Plaintiff, through the Claims Administrator, will cause the Notice, which includes the proposed Plan of Allocation and Proof of Claim form, to be mailed by first class mail to every Settlement Class Member who can be identified through reasonable effort. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the long-form Notice, will be published in *Investor's Business Daily* and transmitted over *PR Newswire*, a national business-oriented wire service.

Finally, Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Proofs of Claim, and to administer the Settlement. A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. *See* Ex. 3.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed notice plan here readily meets these standards, and is typical of notice plans in similar actions. Accordingly, the notice program should be approved by the Court.

III.   **THE PROPOSED SETTLEMENT CLASS**
       **SHOULD BE CERTIFIED FOR SETTLEMENT**
       **PURPOSES PURSUANT TO RULES 23(a) AND (b)(3)**

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class pursuant to Rules 23(a) and (b)(3).  Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See, e.g., Mills,* 265 F.R.D. at 255.  A party seeking class certification must first show that the class action satisfies the following four prerequisites set forth in Rule 23(a): (1) numerosity; (2) commonality of questions of law or fact; (3) typicality of the named plaintiff's claims and defenses; and (4) the adequacy of the named plaintiff.  *See* Fed. R. Civ. P. 23(a).

The party seeking class certification must also satisfy one of the categories set forth in Rule 23(b).  Here, certification is sought pursuant to Rule 23(b)(3), requiring that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b)(3).

**A.      The Requirements of Rule 23(a) Are Satisfied**

**1.      The Members of the Proposed Class Are so Numerous**
**That Joinder of all Members Is Impracticable**

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity "is seldom disputed in securities fraud cases," particularly where, as here, the volume of shares outstanding is sufficient to infer a class with "hundreds, if not thousands, of potential members dispersed throughout the country."  *In re BearingPoint Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (numerosity satisfied where defendant had over 194 million shares of common stock outstanding during the class period); *see also Mills*, 257 F.R.D. at 104-05 (same based on "millions" of shares outstanding).

Here, throughout the Class Period, Neustar common stock was actively traded on the

NYSE.  As of April 11, 2014, Neustar had 60,234,847 shares of common stock issued and

outstanding, owned by thousands of persons.  *See* Compl. ¶ 182.  The numerosity requirement is

met.

### 2. Questions of Law and Fact are Common to the Proposed Class

Rule 23(a)(2) requires that the claims of the proposed Class members involve numerous

common questions of law and fact.  To establish commonality, class members must have

"suffered the same injury," and "[t]heir claims must depend upon a common contention."  *Wal-*

*Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011) (internal citation omitted).  Class

members' "common contention . . . must be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each of the claims in one stroke."  *Id*. at 2551.

In securities fraud litigation, this standard "has been applied permissively," and the

existence of one common legal or factual question is sufficient to satisfy Rule 23(a)(2).  *Simpson*

*v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C. 1993); *Jeffreys v. Communications*

*Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *see also BearingPoint*, 232

F.R.D. at 538 ("The mere existence of individualized factual questions with respect to the class

representative's claim will not bar class certification.").  Indeed, the commonality requirement

"does not mean that members of the class must have 'identical factual and legal claims in all

respects.'"  *Mills*, 257 F.R.D. at 105.

*BearingPoint* expressly acknowledged that "[m]embers of a proposed class in a securities

case are especially likely to share common claims and defenses."  232 F.R.D. at 539.  In most

securities class actions, "[m]isrepresentation, scienter, and materiality are [among the]

paradigmatic common question[s]" of law or fact.  *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.*, 183 F.R.D. 487, 490 (E.D. Va. 1998).  Here, questions of fact and law common to all proposed Class members include: (1) whether the federal securities laws were violated by Defendants' alleged acts; (2) whether Defendants made any material misstatements or omissions during the Class Period regarding Neustar's competitive standing in the LNPA bidding and selection process and the risk that Neustar would lose the NPAC contracts to a competitor; (3) whether Defendants made their misstatements or misrepresentations with the required scienter; (4) whether the market price of Neustar's stock was artificially inflated during the Class Period due to the alleged false and misleading statements or omissions; and (5) to what extent the members of the Settlement Class have sustained damages and the proper measure of damages.

These types of common questions satisfy Rule 23(a)(2).  *See, e.g., In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 571 (S.D.N.Y. 2008) ("whether the [d]efendants' public statements…contained material misrepresentations or omissions in violation of Section 10(b), and whether [d]efendants acted with scienter," are common questions that support a finding of commonality).  Moreover, where, as here, "various of defendants' acts and omissions are at the center of th[e] case, it follows that there are a number of questions of both law and fact common to all members of the proposed class."  *BearingPoint*, 232 F.R.D. at 539.  The commonality requirement is met.

### 3.   Lead Plaintiff's Claims are Typical of Those of the Proposed Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[T]ypicality is rarely lacking in securities class actions."  *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991). "Typicality requires that the claims of the named class representatives be typical of those

of the class; 'a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members.'" *Leinhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal citation omitted).  A representative's claim is typical when the class representative is part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *Shiring v. Tier Techs., Inc.,* 244 F.R.D. 307, 312-13 (E.D. Va. 2007).

Lead Plaintiff's claims are typical of the claims of other members of the Settlement Class.  The claims of all Settlement Class Members arise from the same alleged uniform course of conduct, namely, the alleged misrepresentations and omissions about Neustar's competitive standing in the LNPA bidding and selection process and the risk that Neustar would lose the NPAC contracts to a competitor.  Like all Members of the Settlement Class, Lead Plaintiff purchased shares of Neustar common stock during the Class Period and was allegedly damaged as a result of material misstatements and omissions.  *See* Compl. ¶ 184.  The typicality requirement is met.

### 4.     Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4)'s adequacy of representation requirement entails two showings: "(1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W. Va. 2005).  When plaintiffs have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and does not have interests "antagonistic to those of the proposed class," the adequacy requirement is met.  1-14A *Moore's Manual Federal Practice and Procedure* § 14A.25[1].

First, Lead Plaintiff has common interests with all Settlement Class Members.  As discussed above, Lead Plaintiff purchased Neustar common stock during the Class Period and

was injured by the same alleged misrepresentations and omissions that injured all Settlement

Class Members.  Thus, Lead Plaintiff's interest in establishing Defendants' liability and

obtaining the maximum possible recovery is aligned with the interests of absent class members.

*See id.; In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000).

       Lead Plaintiff has also demonstrated its willingness and ability to serve as class

representative.  INPRS has supervised and monitored the progress of the proceedings,

participated in regular discussions with Lead Counsel concerning case developments and

strategy, and reviewed draft pleadings and other papers in the action.  INPRS has participated in

and approved all material decisions respecting the course of the litigation, including settlement,

and a General Counsel of INPRS responsible for securities litigation attended the mediation

session in person.

       INPRS's active engagement in the litigation demonstrates its adequacy as class

representative.  *See Shiring v. Tier Techs. Inc.,* 244 F.R.D. 307, 316 (E.D. Va. 2007) (adequacy

analysis considered whether plaintiff initiated and supervised litigation, and whether plaintiff

was knowledgeable about, among other things, the complaint's allegations and defendants).

       Second, Court-appointed Lead Counsel is amply qualified and experienced, and has

conducted the action vigorously and effectively on behalf of Lead Plaintiff and the Settlement

Class.  It is respectfully submitted that Labaton Sucharow is among the leading law firms

representing plaintiffs in securities class actions in courts throughout the nation.  Labaton

Sucharow has extensive experience in successfully prosecuting such actions and has achieved

signification results for its clients and investor classes.  Labaton Sucharow is nationally known

as a leader in the fields of class actions and complex litigation, and has served as lead counsel in

a number of high profile matters, including, for example: *In re American International Group,*

*Inc. Sec. Litig*., No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement

System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and

reaching settlements of $1 billion); *In re HealthSouth Corp. Sec. Litig*., No. 03-1501 (N.D. Ala.)

(representing the State of Michigan Retirement System, New Mexico State Investment Council,

and the New Mexico Educational Retirement Board and securing settlements of more than $600

million); and *In re Countrywide Sec. Litig*., No. 07-5295 (C.D. Cal.) (representing the New York

State and New York City Pension Funds and reaching settlements of more than $600 million).

*See* Ex. 2.  The adequacy requirement is met.

## B.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), the Court must also find that

common questions of law predominate and that a class action is the superior method of

adjudication.  *See* Fed. R. Civ. P. 23(b)(3).

### 1.      Common Questions of Law and Fact Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623

(1997).  Predominance is a test readily met in certain cases alleging . . . securities frau[d]."  *Id*. at

625.

Here, the common questions of law and fact set forth above predominate over any

conceivable individual question because Defendants' alleged misconduct affect all Settlement

Class Members in the same manner.  Each Settlement Class Member would need to establish the

same facts to prove Defendants' alleged violations of the Exchange Act, that is, whether

Defendants' public statements during the Class Period misrepresented and omitted material facts

about Neustar's competitive standing in the LNPA bidding and selection process; whether

Defendants acted knowingly or with severe recklessness, in allegedly misrepresenting or

omitting those material facts; whether the prices of Neustar common stock were artificially inflated during the Class Period due to the alleged misrepresentations and omissions; and whether Lead Plaintiff and Settlement Class Members suffered damages, as well as the appropriate measure thereof.

Moreover, Lead Plaintiff's Section 10(b) claims invoke the "fraud-on-the-market" doctrine, which establishes a rebuttable presumption of reliance where a plaintiff shows "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n. 27 (1988)).  Here, Neustar common stock and preferred stock were listed and actively traded on the NYSE, a highly efficient market during the Class Period.

Accordingly, Lead Plaintiff would be able to present common legal and factual arguments regarding all elements of their claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

### 2. A Class Action Is the Superior Method for Resolution of This Controversy

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class

members; [and] (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]"[3]  Fed. R. Civ. P. 23(b)(3)(A)-(C).

Here, all of these factors demonstrate the superiority of the class mechanism for adjudicating Settlement Class Members' claims.

First, the interest of Settlement Class Members in asserting individual claims is limited. The proposed Settlement Class consists of a large number of purchasers of Neustar stock who are geographically dispersed and whose individual damages likely are small enough to keep individual litigation from being economically worthwhile.  Absent certification, the burden and expense of litigating would not be distributed among the Settlement Class, one of the advantages of the class action mechanism.  *See Serzone*, 231 F.R.D. at 240 ("Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums."); *BearingPoint*, 232 F.R.D. at 544.

Second, Lead Counsel is not aware of other pending individual litigation in the United States that tracks the allegations set forth in the Complaint other than those purported class actions already consolidated within this action.  The absence of other matters is further confirmation of the limited interest individual Settlement Class Members have in prosecuting separate actions.

Third, concentrating the litigation in this Court has a number of benefits, including eliminating the risk of inconsistent adjudication and promoting the fair and efficient use of the

---

[3] "[T]he likely difficulties in managing a class action" is a fourth consideration generally relevant to whether the superiority requirement is met.  Fed. R. Civ. P. 23(b)(3)(D).  "Confronted with a request for settlement-only class certification," however, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.

judicial system.  *See, e.g., Serzone*, 231 F.R.D. at 240 ("class treatment limits the possibility of inconsistent rulings regarding liability or the appropriate measurement for damages").  Accordingly, the benefits of concentrating litigation in this Court also weigh in favor of class certification.

Last, federal securities class actions are routinely certified and raise no unusual manageability issues.  *See BearingPoint*, 232 F.R.D. at 544-45 (management of securities class actions are not especially difficult since class members are easily identified).  The proposed class action here presents no unusual difficulties that would preclude certification.  Thus, under the Rule 23(b)(3) factors, the class action mechanism is superior to any other method to secure the just, speedy, and efficient determination of Settlement Class Members' claims.

Accordingly, it is respectfully requested that the Court preliminarily certify the Settlement Class for purposes of the Settlement.

## Conclusion

Lead Plaintiff respectfully requests that the Court grant this motion in its entirety and issue the proposed Preliminary Approval Order submitted herewith.

Dated:  August 6, 2015

Respectfully submitted,

*/s/ Elizabeth A. Aniskevich*

Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers
Elizabeth A. Aniskevich (Va. Bar No. 81809)
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, D.C.  20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
eaniskevich@cohenmilstein.com

*Liaison Counsel for Lead Plaintiff*
*Indiana Public Retirement System*

Joel H. Bernstein (*pro hac vice*)
Eric J. Belfi
David J. Goldsmith (*pro hac vice*)
Eric D. Gottlieb
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
jbernstein@labaton.com
ebelfi@labaton.com
dgoldsmith@labaton.com
egottlieb@labaton.com

*Lead Counsel for Lead Plaintiff*
*Indiana Public Retirement System*
*and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of August 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF.

/s/ *Elizabeth A. Aniskevich*
Elizabeth A. Aniskevich