IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                            )
                            )
IN RE NEUSTAR, INC. SECURITIES  )
                            )       1:14cv885 (JCC/TRJ)
        LITIGATION          )
                            )
                            )
```

# **M E M O R A N D U M   O P I N I O N**

This matter came before the Court on Lead Plaintiff's
Unopposed Motion for Preliminary Approval of Proposed Class
Action Settlement.  [Dkt. 47.]  The motion includes unopposed
requests to certify a settlement-only class; preliminarily
approve the terms of settlement; approve the form of class
notice; and appoint a class representative, class counsel, and
claims administrator.  On September 22, 2015, the Court granted
the motion through a written order.  This memorandum opinion
details the Court's reasoning.

## I.   Background

This securities fraud class action concerns the
bidding process to win a lucrative government contract.  The
winning bidder would serve as the next Administrator of the
Local Number Portability Administration Center ("Center"), a
data registry that enables telephone customers to retain their

1

phone numbers when switching service providers.  (Am. Compl. [Dkt. 23] ¶ 1.)  NeuStar has held the contract to serve as Administrator since 1997, when the Center was created.  (*Id.*) But in 2013, the Federal Communications Commission ("FCC") initiated a competitive bidding process for the Administrator contract, threatening a major source of NeuStar's revenue. (*Id.*)

To facilitate the bidding process, the FCC appointed a federal advisory committee, the North American Numbering Council ("Council"), to work with a private-sector entity to review bids and recommend the next Administrator.  (*Id.* ¶¶ 3, 44.)  The bidding procedures, however, did not progress exactly according to plan.  The FCC extended the submission deadline to allow NeuStar's competitor, Telecordia Technologies, to submit a proposal.  Later, the Council delayed the selection deadline for four months.  (*Id.* ¶ 58.)  Then a request for best and final offers was issued.  (*Id.* ¶ 60.)

Despite these and other indications that NeuStar might lose the bidding to serve as Administrator, Defendants allegedly made public statements between April 18, 2013, and June 6, 2014, reassuring investors of NeuStar's confidence in the competitiveness of its bid.  (*Id.* ¶¶ 101-49.)  Namely, after the FCC extended the bid submission deadline, Neustar issued a press

release stating "We remain confident in the strength of our proposal," (Am. Compl. ¶ 102), followed by a quarterly report and public statements reaffirming the strength of NeuStar's proposal, (*Id.* ¶¶ 109-11).  A NeuStar executive made similar comments after the Council decided to delay the selection of the next Administrator.  (*Id.* ¶ 117)  Lead Plaintiff alleges that Defendants continued to make reassuring statements throughout the class period and failed to adequately disclose indications NeuStar might lose its lucrative contract.  (*Id.* ¶¶ 122-49.)

On June 6, 2014, the FCC inadvertently disclosed a confidential email revealing that the Council had recommended Telecordia to replace NeuStar as the next Administrator.  (*Id.* ¶ 92.)  The FCC substantiated this email the following Monday and began a public notice-and-comment period regarding the Council's recommendation.  (*Id.* ¶¶ 97-98.)  The FCC approved the recommendation in March 2015 and ordered NeuStar to facilitate Telecordia's transition to become the next Administrator.[1]

In July 2014, Lead Plaintiff's predecessor filed this lawsuit, alleging NeuStar executives' statements or omissions during the bidding process violated Sections 10(b) and 20(a) of

---

[1]      Independent of this action, NeuStar filed a Petition for Review challenging the FCC's order and bidding process.  *See NeuStar, Inc. v. FCC*, No. 15-1080 (D.C. Cir. filed Apr. 6, 2015).  The FCC filed a motion to dismiss, which was still pending as of September 23, 2015.

the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b),
78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. (Am. Compl.
¶¶ 193-219.)  Pursuant to the Private Securities Litigation
Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), the
Court appointed the Indiana Public Retirement System as Lead
Plaintiff and approved selected counsel.  [Dkt. 11.]
Thereafter, the Court heard arguments on Defendants' motion to
dismiss.  The Court granted the motion, finding that Defendants'
statements were not actionable under the securities law, there
was no loss causation, and Defendants did not act with the
requisite mental state.  *In re NeuStar Sec. Litig.*, No.
1:14cv885(JCC/TRJ), 2015 WL 364578 (E.D. Va. Jan. 27, 2015).
Lead Plaintiff timely noticed an appeal to the Fourth Circuit,
but the parties reached a settlement before briefing their
arguments.  The Fourth Circuit remanded the case to this Court
to consider the proposed settlement.

Lead Plaintiff now moves unopposed for the preliminary
approval of the proposed settlement, which requires: (1)
certification of a settlement class; (2) preliminary approval of
the terms of settlement; (3) approval of the proposed notice to
class members; and (4) appointment of a Class Representative,
Class Counsel, and Claims Administrator.

4

## II.   Legal Standard

Federal Rule of Civil Procedure 23 imposes requirements for class certification and settlement of a class action.   Fed. R. Civ. P. 23(a)-(b), (e).   Even before a court has certified a class, putative class plaintiffs may reach an agreement of settlement with defendants.   In such cases, plaintiffs may seek to give effect to this settlement through a settlement-only class.   *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) (calling the settlement class a "stock device"); *see also Henderson v. Acxiom Risk Mitigation, Inc.*, No. 3:12cv589-REP, 2015 WL 4608265, at *1 (E.D. Va. Apr. 21, 2015) (approving a settlement class).   The prospect of settlement often "nullifies a defendant's incentive in contesting the propriety of certification."   *Menkes v. Stolt-Neilson S.A.*, 270 F.R.D. 80, 88 (D. Conn. 2010).   Despite this lack of opposition, the court must continue to apply the "rigorous analysis" Rule 23 requires.   *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004) (discussing the "important responsibility conferred on courts by Rule 23").   In fact, the requirements of Rule 23 "demand undiluted, even heightened attention" when evaluating settlement classes because the court will "lack the opportunity, present when a case is litigated, to adjust the class, informed by proceedings as they

5

unfold." *Amchem Prods., Inc.*, 521 U.S. at 620.  These
principles guide the Court's analysis of this proposed
settlement agreement.

### III. Analysis

**A.**        <u>**Class Certification**</u>

A settlement class, like a litigation class, must
satisfy the requirements of Federal Rule of Civil Procedure
23(a).  Under Rule 23(a), plaintiff must prove the threshold
elements of (1) numerosity, (2) commonality, (3) typicality, and
(4) adequacy.  Fed. R. Civ. P. 23(a).  The class must also
qualify as one of the three Rule 23(b) class types.  Here, Lead
Plaintiff proceeds as a Rule 23(b)(3) class.  Thus, plaintiff
must show that common issues of law or fact predominate over any
individual questions and that the class action is the superior
method for adjudicating the controversy.  *Id.* at 23(b)(3).  The
Court applies the preponderance of the evidence standard to this
Rule 23 analysis.  *See In re The Mills Corp. Sec. Litig.*, 257
F.R.D. 101, 104 (E.D. Va. 2009) (applying preponderance standard
to a Rule 23 inquiry).

The Court first addresses the 23(a) requirements,
followed by the 23(b)(3) analysis.

i)          Rule 23(a) Prerequisites

      a)          Numerosity

Numerosity exists when the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is "seldom disputed in securities fraud cases," *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006), as "a showing that a large number of shares were outstanding and traded during the relevant period" would prove that joinder is impractical. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009). That standard is clearly satisfied in this case.

NueStar had around 60 million shares outstanding on the New York Stock Exchange ("NYSE") during the proposed class period. (Mem. in Supp. at 13.) At that time, investors traded hundreds of thousands, if not millions, of these shares daily. (*See* Am. Compl. ¶¶ 139, 152 (listing average daily trading volumes as 838,620 within the year before the end of the class period).) The shares outstanding and trading volumes imply that thousands of putative class members could exist, which far exceeds the number of plaintiffs a court could practically join. *See, e.g., Dashiell v. Van Ru Credit Corp.*, 283 F.R.D. 319, 322 (E.D. Va. 2012) (presuming the joinder of 65 individuals to be impracticable).

b)          Commonality

The Court also finds that the second Rule 23(a) requirement of commonality is met here.  Commonality exists when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is not a heavy burden in securities fraud class actions as "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses."  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. at 539.  Plaintiffs certifying a class under Rule 23(b) carry a related, but more demanding, burden of proving that these common questions of law or fact not only exist, but also "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Because the predominance inquiry is "more stringent," that analysis may "subsume[] . . . or supersede[]" the Rule 23(a)(2) commonality analysis.  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem Prods., Inc.*, 521 U.S. at 609.  The Court, therefore, reserves its discussion of the common questions of law and fact in this case to its predominance analysis in part III(A)(ii)(a) below.  There, the Court finds that common questions of law and fact predominate over any individual issues.

c)          Typicality

The Court finds the third class-certification requirement met because "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This typicality prerequisite requires that the class representative "be part of the class and possess the same interest and suffer the same injury as the class members."  *Lienhart*, 255 F.3d at 146 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  Typicality ensures that "the class representative's interests will be sufficiently aligned with those of the other class members."  *In re Computer Sci. Corp. Sec. Litig.*, 288 F.R.D. 112, 117 (E.D. Va. 2012).  Here, the class representative's interests are so aligned.

Like all putative class members, the Lead Plaintiff in this case alleges that it purchased NeuStar common stock during the class period and was injured by Defendants' allegedly fraudulent statements or omissions.  (*See* Am. Compl. ¶ 184.) Putative class members and Lead Plaintiff alike would attempt to prove securities fraud by showing (1) Defendants' material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6)

9

loss causation.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (stating elements of Section 10(b) and Rule 10b-5 violation).  Lead Plaintiff would rely on evidence of Defendants' public statements or omissions and the resulting effect on share value, as would all putative class members.  Although each class member's claim may vary slightly based on the date of purchase and sale, "such minor distinctions will not preclude the propriety of class adjudication." *Menkes*, 270 F.R.D. at 92 (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 37 (2d Cir. 2009)).  Furthermore, Lead Plaintiff does not face any unique defenses that threaten to misalign its interests and the class's interests.  *See In re Computer Sci. Corp. Sec. Litig.*, 288 F.R.D. at 122 (considering whether the "class representative is subject to unique defenses that threaten to become the focus of the litigation").  Therefore, the Court finds Lead Plaintiff's claims are typical of the claims of the class.

        d)        <u>Adequacy</u>

Lastly, the Court is satisfied that Lead Plaintiff will fairly and adequately protect the interests of the proposed settlement class.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met when (1) the named plaintiff does not have interests antagonistic to those of the class; and (2)

10

plaintiff's attorneys are "qualified, experienced, and generally able to conduct the litigation." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625.

Lead Plaintiff represents that it "has common interests" with the proposed settlement class and the Court has identified nothing that might indicate antagonism with the class's interests.  (Mem. in Supp. at 15.)  As mentioned above, Lead Plaintiff purchased NeuStar common stock during the class period and alleges a loss in share value, just like all putative class members would claim.  *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) ("The Supreme Court 'has repeatedly held [that] a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'" (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977))).  Furthermore, the proposed class members' claims are homogenous and nothing indicates the existence of subgroups that might require the creation of subclasses.  *See Amchem Prods., Inc.*, 521 U.S. at 626 (identifying conflicts of interest between

prospective class members with current asbestos-related injuries and those with only exposure to asbestos).

Lead Counsel is also sufficiently qualified and experienced to fairly represent the interests of the class. "The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 239. Lead Counsel has an extensive record of representing plaintiffs in securities class actions, which indicates counsel's ability to properly leverage the value of this case into a fair settlement. (*See* Mem. in Supp. Ex. 2 [Dkt. 48-3].) That record was reaffirmed throughout this case, wherein Lead Counsel argued vigorously at the motion to dismiss stage, pursued its case at the appellate level, and engaged Defendants in settlement mediation.

In light of the foregoing, the Court finds that Lead Plaintiff has satisfied all of the Rule 23(a) class certification prerequisites.

ii)      Rule 23(b)(3) Requirements

In addition to meeting the threshold requirements of Rule 23(a), a plaintiff seeking class certification must prove the case qualifies as one of the three Rule 23(b) class types.

12

In this case, Lead Plaintiff seeks to qualify as a Rule 23(b)(3) class, which requires proof (1) that common questions of law or fact predominate and (2) that a class action is the superior method of adjudication. Fed. R. Civ. P. 23(b)(3). For the following reasons, the Court finds Lead Plaintiff has proven these requirements by a preponderance of the evidence.

a)        <u>Predominance</u>

The first requirement of Rule 23(b)(3) is that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The common questions must be dispositive and over-shadow other issues." *Lienhart*, 255 F.3d at 146. This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.* 521 U.S. at 623. That standard is certainly met in this securities fraud class action.

In this case, at least five of the six elements of a Section 10(b) and Rule 10b-5 violation involve proof common to the class. To succeed on the merits, each class member must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

13

(5) economic loss; and (6) loss causation.'" *Erica P. John Fund, Inc.*, 134 S. Ct. at 2407 (quoting *Amgen Inc.*, 133 S. Ct. at 1192). "[T]he questions of whether Defendants' statements or omissions were material, whether they were made in connection with the purchase or sale of securities, and whether they were made with scienter, are necessarily common to each class member given that Defendants' conduct alone is relevant to their proof." *Menkes*, 270 F.R.D. at 91. Additionally, class members would prove loss causation through common evidence like event studies, expert testimony, or other evidence demonstrating that the "misrepresentation or omission was one substantial cause of the investment's decline in value." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011). Thus, the elements of materiality, connection to securities, scienter, and loss causation are quickly identifiable as common questions. This leaves only the elements of reliance and plaintiffs' economic losses left to assess.

Reliance is also a common question in this case, although the Court must detour slightly to reach that conclusion. In a Section 10(b) and Rule 10b-5 action, reliance "ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury." *Amgen Inc.*, 133 S. Ct. at 1192. To prove reliance directly, a putative class

14

member must show "that he was aware of the company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Id.* This direct proof of reliance would cause individual class members' questions of fact to dominate common questions, thereby preventing certification under Rule 23(b)(3). *See id.* at 1193 ("[T]he requirement that Rule 10b-5 plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class."). Lead Plaintiff overcomes the direct-proof problem in this case, however, by demonstrating indirect reliance through the "fraud-on-the-market" theory. (*See* Mem. in Supp. at 18.)

The fraud-on-the-market theory allows a court to presume reliance when defendants make public, material misrepresentations regarding securities traded in an efficient market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988) (recognizing the fraud-on-the-market theory). This presumption arises from the premise that an efficient market will incorporate all public information into the security's price. *See Amgen Inc.*, 133 S. Ct. at 1192. Additionally, "it is reasonable to presume that most investors . . . will rely on the security's market price as an unbiased assessment of the

15

security's value in light of all public information." *Id.*
Thus, courts may presume that investors indirectly rely on the
defendant's public, material misrepresentations by trusting the
integrity of the market price. *Id.* at 1192-93. To prove such
indirect reliance at trial, a plaintiff must show "(1) that the
alleged misrepresentations were publicly known, (2) that they
were material, (3) that the stock traded in an efficient market,
and (4) that the plaintiff traded the stock between the time the
misrepresentations were made and when the truth was revealed."
*Halliburton Co.*, 485 U.S. at 248. At the class certification
stage, however, no proof of materiality is required.[2] *Amgen
Inc.*, 133 S. Ct. at 1196 ("[P]roof of materiality is not

---

[2]       This Court's finding of lack of materiality at the
motion-to-dismiss stage does not preclude the fraud-on-the-
market theory at class certification.   Regardless of the merits
of the materiality inquiry, proving materiality remains a common
question. *See Amgen, Inc.*, 133 S. Ct. at 1196. ("Connecticut
Retirement's failure to present sufficient evidence of
materiality to defeat a summary-judgment motion or to prevail at
trial would not cause individual reliance questions to overwhelm
the questions common to the class.")   Materiality remains a
common issue because it is an objective concept, requiring the
court to consider how a reasonable investor would interpret a
public statement. *Id.* This can be shown through "evidence
common to the class." *Id.* Furthermore, a failure of proof of
materiality would not convert reliance into an individual
question.   Instead, the entire lawsuit would terminate for all
class members, exactly as occurred in this case below. *See id*.
("A failure of proof on the *common* question of materiality ends
the litigation and thus will never cause individual questions of
reliance or anything else to overwhelm questions common to the
class.").

required to established that a proposed class is 'sufficiently cohesive to warrant adjudication by representation'—the focus of the predominance inquiry under Rule 23(b)(3)."). For the following reasons, the Court finds the fraud-on-the-market theory makes reliance a common question in this case.

First, NeuStar's common stock is traded on an efficient market. To assess market efficiency, courts consider "whether the security is actively traded, the volume of trades, and the extent to which it is followed by market professionals," among other factors. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 368 (4th Cir. 2004). NeuStar's common stock trades on the NYSE, which "is not itself necessarily dispositive, but certainly weighs in favor of finding that the stock is traded in the sort of 'impersonal, well developed market for securities' that the Supreme Court envisioned when it adopted the fraud-on-the-market theory." *In re Computer Sci. Corp. Sec. Litig.*, 288 F.R.D. 112, 119 (E.D. Va. 2012). Additionally, NeuStar had around 60 million shares outstanding during the class period. (*See* Am. Compl. ¶ 182.) Furthermore, average daily trading volume during the Class Period exceeded 1% of outstanding shares. *See NeuStar Inc. Cl A*, MarketWatch, http://www.marketwatch.com/investing/stock/nsr (last visited Aug. 31, 2015). Trading volume of this magnitude on a prominent

17

national exchange like the NYSE is sufficient to justify a strong presumption of market efficiency. *See In re Comp. Sciences Corp. Sec. Litig.*, 288 F.R.D. at 119 (finding efficient market with 155 million shares outstanding on NYSE and weekly trading volume exceeding 4%).

Second, Defendants made their alleged misrepresentations publicly. The misrepresentations that Lead Plaintiff identifies in its complaint were made in press releases, security analyst conference calls, and SEC filings. These statements were sufficiently public to have been incorporated into NeuStar's stock price. *See In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 91 (E.D.N.C. 2009) (summarily finding statements made "via SEC filings, press releases, analyst conferences calls, and an interview" to be public).

Finally, the class is limited to investors who purchased stock after Defendants' alleged misstatements, but before the FCC inadvertently revealed that NeuStar would not likely win the Administrator contract. (*See* Proposed Order [Dkt. 48-2] ¶ 1(e) (defining class period).) Viewed together, the foregoing factors lead the Court to find, for purposes of class certification only, that the fraud-on-the-market theory makes reliance a common question here. Therefore, this case presents common questions regarding materiality, scienter,

18

connection with the sale or purchase of securities, loss causation, and reliance.

The only remaining element in the Section 10(b) and Rule 10b-5 claim is each plaintiff's economic loss. Although economic losses must be proven individually, the proof required is not overly burdensome. Each plaintiff could show his or her losses through evidence of purchase and sale dates. This minimal showing would not predominate the common questions. *See Menkes*, 270 F.R.D. at 92 (finding that variances in "dates of purchase and sale . . . will not preclude the propriety of class adjudication").

Similarly, the Section 20(a) claims against individual defendants present predominantly common questions. Section 20(a), in short, imposes liability on a person who controls someone who violates the securities laws. 15 U.S.C. § 78t(a). To show a violation of Section 20(a), each putative class member must prove a violation of Section 10(b), the Defendants' direct or indirect control over the violator, and rebut any affirmative defense of good faith. *See In re Cable & Wireless, PLC, Sec. Litig.*, 321 F. Supp. 2d 749, 760 (E.D. Va. 2004) (stating elements of Section 20(a)). Thus, "each class member's control person claim should be identical given that Defendants' conduct alone is relevant to satisfying the applicable standard, and

given that each class member's claim arises from the same statements made by Defendants." *Menkes*, 270 F.R.D. at 91.

Therefore, common questions predominate over this federal securities fraud case, satisfying the first requirement for certifying a Rule 23(b)(3) class.

       b)        <u>Superiority</u>

Turning to the second, and last, element of the Rule 23(b)(3) inquiry, the Court finds class action to be the superior method of settling this case.  Superiority exists when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) directs a court to consider four factors in its superiority analysis:

> [T]he class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of claims in the particular forum; and the likely difficulties in managing the class action.

*Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. Apr. 2, 2015) (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).  In settlement classes, however, courts need not consider the last factor, "whether the case, if tried, would

present intractable management problems, for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 593.

Looking to class members' potential interest in initiating separate actions, the Court finds such suits unlikely due to the size of probable recovery and expense of individual litigation. *See In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 81 (D. Md. 1991) ("[A] class action is the most efficient means of litigating a securities fraud suit where the class consists of numerous investors, many of whom in all likelihood have individual claims too small to warrant an individual suit." (internal quotation omitted)). NeuStar's common stock price dropped $18.14 over the entire class period and fell $32.08 from its peak during that time. (Am. Compl. ¶¶ 151-52.) Although this loss in value is not insignificant, individual class members would need to have purchased a large number of shares for their potential recovery through litigation to justify the expense of proceeding alone. Furthermore, the drop in share price is likely more than each class member could expect to recover per share. Proving damages requires evidence of a decrease in value *and* that Defendants' statements were a "substantial cause of the investment's decline." *Katyle*, 637 F.3d at 472 (quoting *In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 128 (4th Cir. 2009)). This small likelihood of recovery

21

would also reduce an individual plaintiff's leverage in settlement negotiations.  Therefore, interest in initiating individual suits is likely low.

The second Rule 23(b)(3) factor addresses whether class members have already begun other litigation.  Fed. R. Civ. P. 23(b)(3)(C).  Lead Plaintiff "is not aware of other pending individual litigation in the United States that tracks the allegations set forth in the Complaint other than those purported class actions already consolidated within this action."  (Mem. in Supp. at 19.)  Additionally, NeuStar did not identify any other litigation pending against it in its most recent SEC filing on June 30, 2015.  *See* NeuStar, Inc., Quarterly Report (Form 10-Q) (July 30, 2015), *available at* http://www.sec.gov/Archives/edgar/data/1265888/000126588815000040/nsr-2015630x10q.htm#s06832911617B556C87D8BE016BB6AA73.  The absence of independent actions weighs in favor of certifying a settlement class here.

The Court turns now to the last Rule 23(b)(3) factor, the propriety of consolidating all claims in this particular forum.  Fed. R. Civ. P. 23(b)(3)(C).  This Court is apprised of the facts and procedure of the case, such that it would promote judicial economy to resolve this case as a class with this Court, rather than require individual plaintiffs to file

22

separate actions elsewhere.  Furthermore, a class action
presents plaintiffs the greatest leverage for settlement when
compared to individual litigation in courts that may render
inconsistent rulings.  *See EQT Prod. Co. v. Adair*, 764 F.3d 347,
371 (4th Cir. 2014) (noting concerns of judicial economy and
avoidance of inconsistent judgments as factors "relevant to the
superiority analysis").

      In conclusion, Lead Plaintiff has sufficiently proven
the prerequisites for certification under Rule 23(a) and that
this case qualifies as a Rule 23(b)(3) class.  Therefore, this
Court certifies the Settlement Class defined in the accompanying
order.

**B.**         **Proposed Settlement Agreement**

      Before parties may settle a class action, a court must
approve the settlement.  Fed. R. Civ. P. 23(e).  Final approval
of the settlement requires a hearing to determine whether the
agreement is "fair, reasonable, and adequate."  *Id.* at 23(e)(2).
This standard includes an assessment of both the procedural
fairness of the settlement negotiations and the substantive
adequacy of the settlement itself.  *See In re Am. Capital
S'holder Derivative Litig.*, No. 11-2424 PJM, 2013 WL 3322294, at
*3 (D. Md. June 28, 2013) (identifying procedural and
substantive prongs of settlement analysis).  The procedural

fairness inquiry protects against "the danger of counsel . . . compromising a suit for an inadequate amount for the sake of insuring a fee." *Id.*  The substantive adequacy inquiry, by contrast, "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement." *Id.* (internal quotations omitted).  Together, these requirements serve to protect "class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Before a court conducts its final fairness hearing, it may apply the same principles at a preliminary fairness hearing. During the preliminary review, a court evaluates whether there is a "basic showing" that the proposed settlement "is within the range of possible approval." *In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *3.  In other words, the court considers whether there is "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *Id.* (quoting Manual for Complex Litigation § 1.46 (5th ed. 1982)).

Lead Plaintiff's memorandum in support of its motion and counsel's responses at the preliminary hearing satisfy the Court that the proposed settlement agreement is within the range

24

of approval required by Federal Rule of Civil Procedure 23(e).

i)      Fairness

Four factors from *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991), guide the Court's analysis of whether the settlement was reached through good-faith bargaining at arm's length.  Those factors are "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation."  *Id.* at 159; *see also In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *4 (looking to nearly identical factors at the preliminary hearing stage).

Looking to the first factor, the Court considers whether the case has progressed far enough to dispel any wariness of "possible collusion among the settling parties."  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159).  Since the initial complaint was filed, Lead Plaintiff has filed an amended complaint, argued at the motion to dismiss stage, noticed an appeal, and engaged Defendants in settlement mediation.  These adversarial encounters dispel any apprehension of collusion between the parties.

25

The Court turns next to the second *Jiffy Lube* factor, the extent of discovery.  This factor permits the Court to ensure that all parties "appreciate the full landscape of their case when agreeing to enter into the Settlement."  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 254.  The Fourth Circuit has "held that a reasonable judgment of the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial."  *In re Jiffy Lube Sec. Litig*, 927 F.2d at 159.  Although this case never reached fact or class discovery proceedings, Lead Counsel represents that it has a "thorough understanding of the strengths and weaknesses of its claims against Defendants after almost two years of investigation and litigation."  (Mem. in Supp. at 7.)  At the preliminary fairness hearing, Lead Plaintiff's counsel represented that it had conducted in-depth reviews of publicly available information, conducted market efficiency and loss causation analysis, and received detailed damages analysis from an expert.  This informal discovery satisfies the Court that the parties sufficiently understood the nature of their positions. *See In re Jiffy Lube Sec. Litig*, 927 F.2d at 159 (noting the district court's reliance on "plaintiffs' informal discovery" when approving a settlement).

The Court also finds that the settlement negotiations satisfied the third *Jiffy Lube* factor.  Parties reached this proposed settlement after one day of mediation before a Judicial Arbitration and Mediation Services neutral.  Parties exchanged "comprehensive mediation statements and supporting evidence, including information and analyses from experts." (Mem. in Supp. at 7.)  These features indicate an arm's length negotiation. *See In re Jiffy Lube Sec. Litig*, 927 F.2d at 159.

Lastly, the Court is satisfied that Lead Plaintiff's legal counsel are sufficiently experienced in this field of law to adequately represent the interests of class members.  Counsel may be evaluated by their "affiliat[ion] with well-regarded law firms with strong experience" in the relevant field.  *In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *4. Counsel in this case are affiliated with national law firms recognized for their experience in securities litigation and class representation.  They have proffered that "the Settlement is fair and in the best interest of the Settlement Class." (Mem. in Supp. at 8.)  In light of counsel's experience and familiarity with this case, the Court finds these representations persuasive.  *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 256 ("[W]hen Class Counsel are nationally recognized members of the securities litigation bar, it is

27

entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement."  (internal quotation omitted)).

Taken together, these factors indicate that the proposed settlement agreement is the product of a fair process of adversarial litigation and negotiation.

ii)     <u>Adequacy</u>

The Court is also satisfied with the adequacy of the terms of the proposed settlement agreement.  The adequacy analysis "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement."  *In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *3.  The factors to consider include:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*In re Jiffy Lube Sec. Litig*, 927 F.2d at 159.

In this case, the above factors weigh in favor of finding the proposed settlement adequate.  On the one side, plaintiffs are not likely to recover if this case does not settle.  The Court dismissed this case in January 2015, thus

28

indicating the weakness of Lead Plaintiff's claims and the obstacles of proof it faces moving forward on appeal. The Court found many deficiencies in Lead Plaintiff's case, including failure to show loss causation, lack of scienter, absence of actionable statements, and application of the bespeaks caution doctrine. *See In re NeuStar Sec. Litig.*, No. 1:14cv885(JCC/TRJ), 2015 WL 364578, at *5-12 (E.D. Va. Jan. 27, 2015). Any one of these deficiencies would have been sufficient for the Court to dismiss the complaint. Furthermore, any recovery would be offset by substantial litigation costs. If this case is not settled, parties must prepare appellate briefs and argue the merits before the Fourth Circuit. If plaintiffs succeed on appeal, the case must proceed to the costly procedures of class certification, discovery, summary judgment, and trial before any putative class members may recover.

In light of the low likelihood of plaintiff's recovery through trial, the $2,625,000 benefit from settlement weighs heavily on the side of finding the agreement adequate. This remains true despite the attorney's fees that will be deducted from this settlement amount. The court is not currently aware of any putative class member objections to the sufficiency of this settlement. Therefore, the Court finds that the proposed settlement is sufficiently adequate.

In conclusion, the Court is satisfied that the proposed agreement is both fair and adequate enough for notice of settlement to issue. The Court will make a final fairness determination after the final fairness hearing.

**C.        Notice Requirements**

Lead Plaintiff also seeks approval of its proposed method of notifying class members of the settlement. (Mem. in Supp. at 1-2, 10-11.) The Court finds the proposed notice satisfies Federal Rule of Civil Procedure 23(c)(2), the United States Constitution, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). These authorities impose requirements on both the method and substance of notice, which the Court considers in turn.

The method of notice to a Rule 23(b)(3) class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Additionally, settlement of a class requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* at 23(e)(1). When certification and settlement occur simultaneously, as here, one notice may satisfy both requirements. *See Menkes*, 270 F.R.D. at 105 ("[I]n the simultaneous certification and settlement context, as here, a single notice suffices if it constitutes the

best notice that is practicable under the circumstances in accordance with Rule 23(c)(2)(B).").  Use of the best notice practicable under the circumstances ensures due process for class members.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)(reviewing language and intent of Rule 23(c)(2)). Lead Plaintiff's proposed method of notice satisfies this standard.

Lead Plaintiff proposes to send notice by first-class mail to all potential class members reasonably identifiable from NeuStar's electronically searchable transfer records.  (Mem. in Supp. Ex. 1 at 48.)  An experienced claims administrator will also strive to contact class members through nominee purchasers, such as brokerage firms.  (*Id.* at 49.)  Additionally, Lead Counsel proposes to cause Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Business Newswire* within 14 calendar days of the Court's preliminary approval of settlement and class certification.  (*Id.*)  The Court finds this proposed method of notice to be adequate.  *See Menkes*, 270 F.R.D. at 106 (approving substantially similar methods of notice).

Of course, a sufficient method of notice is not enough.  The content of the notice must also be adequate to inform class members of the case and their rights.  To that end,

31

Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA impose
specific notice content requirements.  Under Rule 23(c)(2)(B),
notice must state the following in clear, concise, and easily
understood language:

> (i) the nature of the action; (ii) the
> definition of the class certified; (iii) the
> class claims, issues, or defenses; (iv) that
> a class member may enter an appearance
> through an attorney if the member so
> desires; (v) that the court will exclude
> from the class any member who requests
> exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding
> effect of a class judgment on class members.

Fed. R. Civ. P. 23(c)(2)(B).  Furthermore, the PSLRA requires
(i) a statement of plaintiff recovery; (ii) a statement of
potential outcome of the case; (iii) a statement of attorneys'
fees and costs sought; (iv) identification of lawyers'
representatives; (v) reasons for settlement; (vi) other
information the court requires; and (vii) a cover page
summarizing that information.  15 U.S.C. § 78u-4(a)(7).

Lead Plaintiff's detailed proposed notice satisfies
these requirements.  Thus, the Court approves the proposed form
of notice.

**D.      Appointment of Class Representative, Class Counsel,
         and Claims Administrator**

Lead Plaintiff also seeks to be appointed as Class
Representative and to have Lead Counsel appointed as Class

Counsel.  Defendants consent to this appointment.  The parties propose A.B. Data, Ltd. ("A.B. Data") as Claims Administrator. (Mem. in Supp. at 11.)

A Class Representative must be both adequate and typical of the class.  Fed. R. Civ. P. 23(a)(3)-(4).  The Court addressed these criteria in its discussion of the prerequisites for class certification.  Consistent with those findings, the Court appoints Lead Plaintiff Indiana Public Retirement System as Class Representative.

The Court must also appoint class counsel when certifying a class.  Fed. R. Civ. P. 23(g)(1).  This appointment is based on (1) counsel's work identifying and investigating claims in this action; (2) counsel's experience handling this type of case; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to its representation. *Id.* at 23(g)(1)(A).  Additionally, class counsel must "fairly and adequately represent the interests of the class."  *Id.* at 23(g)(4).

For the reasons elaborated in subsection III.(A)(i)(d) above, the Court finds Lead Counsel Labaton Sucharow LLP satisfies the requirements of Rule 23(g)(1)(A) and 23(g)(4). Therefore, the Court appoints Labaton Sucharow LLP as Class Counsel.

Lastly, A.B. Data has submitted a detailed summary of its experience administering claims in complex class actions. (*See* Ex. 3 [Dkt. 48-4].)  Furthermore, Lead Plaintiff described how A.B. Data will notify class members of their rights and obligations and the Court approved that notice.  Accordingly, the Court appoints A.B. Data as Claims Administrator.

### IV.   Conclusion

For the foregoing reasons, the Court grants Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement.  An appropriate order issued on September 22, 2015.

_____/s/_____
September 23, 2015            James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE